IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANDRA R.W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:20-CV-01368-MAB |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.[2]

## Procedural History

Plaintiff applied for DIB and SSI in 2013 (Tr. 265, 272). The claim was denied and appealed twice (Tr. 138, 142, 147, 150, 153). Following a hearing, the Administrative Law Judge (ALJ) found Plaintiff not disabled in a 2017 written decision (Tr. 10-24). The Appeals Council denied review, and Plaintiff appealed to this Court (Tr. 1-3; 1077-1080).

On November 1, 2018, Judge Proud issued an Order reversing and remanding

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*See* Doc. 8).

Plaintiff's claims (Tr. 1081-1097).[3] Judge Proud ordered Defendant to rehear the claim and reconsider the evidence (Tr. 1097). Accordingly, the ALJ conducted a new hearing and issued a new decision in 2019 (Tr. 980-1007; 1018-1045). The ALJ found, again, that Plaintiff was not disabled, and the Appeals Council declined to assume jurisdiction (Tr. 969, 1007). Therefore, the 2019 ALJ decision is the final decision. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issue:

The ALJ failed to properly evaluate Plaintiff's Residual Functional Capacity ("RFC") because the ALJ failed to account for Plaintiff's moderate deficits in concentration, persistence, and pace in the RFC. Additionally, the ALJ failed to support his findings of fact with the record as a whole.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[4] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[3] The Court notes that the issue before Judge Proud and the undersigned are different. Judge Proud analyzed whether the ALJ properly assessed the effects of Plaintiffs fibromyalgia, as Plaintiff alleged the ALJ misunderstood the nature of the disease, misstated evidence, and ignored favorable evidence (Tr. 1083). Additionally, Judge Proud analyzed whether the ALJ ignored evidence supporting the diagnoses of lupus and rheumatoid arthritis (Tr. 1083). These issues are not before the undersigned here.

[4] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order. 20 C.F.R. § 416.920(a)(4). The first question is whether the claimant is presently engaged in substantial gainful activity? *Id.* If the answer is yes, then the claimant is not disabled regardless of their medical condition, their age, education, and work experience. *Id.* at § 416.920(a)(4)(i), (b). If the answer is no, and the individual is not engaged in substantial gainful activity, the analysis proceeds to question two. *Id.* at § 416.920(a)(4).

At question two, the ALJ considers whether the claimant has a medically determinable physical or mental impairment, or a combination of impairments, that is "severe" and expected to persist for at least twelve months? 20 C.F.R. § 416.920(a)(4)(ii), 416.909. If the answer is no, then the claimant is not disabled. *Id.* at § 416.920(c). If the answer is yes, the analysis proceeds to question three. *Id.* at § 416.920(a)(4).

At question three, the ALJ must determine whether the claimant's severe impairments, singly or in combination, meet the requirements of any of the "listed impairments" enumerated in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. (list of impairments). A claimant who meets the requirements of a "listed impairment" is deemed disabled. 20 C.F.R. § 416.920(d). For claimants who do not meet the requirements of a "listed impairment," the ALJ must then determine the claimant's residual functional capacity (RFC). *Id.* at § 416.920(e).

Then at step four, the ALJ must determine whether the claimant retains the RFC to continue performing their former occupation. 20 C.F.R. § 416.920(a)(4)(iv). If the answer is yes, then the claimant is not disabled. *Id.* at § 416.920(a)(4)(iv), (f). If the answer is no, the analysis proceeds to the fifth and last question, which is whether the claimant can make an adjustment to perform any other work. *Id.* at § 416.920(a)(4)(v). If the answer is yes, then the claimant is not disabled. *Id.* at § 416.920(g). If the answer is no, the claimant is found disabled. *Id.*

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein. "[W]e will reverse only

Page 4 of 26

if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citation and internal quotation marks omitted).

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. At step one and two, he determined that Plaintiff had not engaged in substantial gainful activity since February 1, 2013, Plaintiff's alleged onset date (Tr. 982). Plaintiff was born on December 10, 1970 and was 42-years old on the alleged disability onset date (Tr. 1005). At step three, the ALJ found that Plaintiff had severe impairments of fibromyalgia, degenerative disc disease, degenerative joint disease of the right hip, obesity, mild right carpal tunnel syndrome, depression, anxiety, post-traumatic stress disorder (PTSD), and residuals of a right ankle spiral fibula fracture (Tr. 982-983).   At step four, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 987).

At step five, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §404.1567(b) with the following limitations:

> She can lift/carry up to twenty pounds occasionally and ten pounds frequently. She can stand or walk a total of six hours and sit a total of six hours in an eight-hour workday. She can occasionally balance, kneel, crouch, crawl, and climb ramps and stairs. She cannot have exposure to whole body vibration. She can perform no overhead reaching, but can frequently reach in all other directions, and frequently handle and finger. She cannot push or pull leg levers, but ordinary foot pedals are unlimited. She can have no concentrated exposure to pulmonary irritants defined as no work environment with airborne particulates from e.g. grinding or sanding processes and no unventilated noxious fumes. The claimant can do simple routine tasks with occasional superficial interaction with co-workers

and supervisors, and no direct interaction with the general public. Superficial is defined as no mediation, arbitration, negotiation, or confrontation of others or supervision of others. Changes in duties need to be the same changes daily.

(Tr. 990).

Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform past relevant work (Tr. 1004-1006). Ultimately, the ALJ found Plaintiff was not disabled, though, because she was able to do other jobs that exist in significant numbers in the national economy (Tr. 1004-1006).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points and factual allegations raised by Plaintiff.

**1.     Evidentiary Hearing**

Plaintiff was represented by an attorney at the August 13, 2019 hearing. (Tr. 1018). Plaintiff testified that she lives with her son who is 23-years old in a three-bedroom home (Tr. 1032-1034). She owns the home as the result of her 2013 divorce settlement (Tr. 1034). While her son's income is about $750.00 per month, she has a friend who helps them out financially and with rides, at times (Tr. 1032-1033). Plaintiff testified that she sometimes goes to sleep at 7:00 pm, but then at other times, she goes to bed at 10:00 pm, usually waking up around 6 or 7am (Tr. 1033). She doesn't sleep well, though, because her body gets stiff and numb due to her various physical ailments (*Id.*). Plaintiff testified that she used to have hobbies, but cannot participate in them anymore due to her disabilities (*Id.*).

Plaintiff testified that her son cleans the house and when he can't, her friend comes over to clean, feed the dogs, do the laundry, cut the grass, and go grocery shopping (Tr. 1034).

As this was the second hearing, the ALJ jumped into questions about Plaintiff's physical ailments, starting with her fibromyalgia and how it impacts Plaintiff (Tr. 1021-1022). Plaintiff explained that her condition causes her pain all over and numbness in her extremities (Tr. 1022). The ALJ then asked Plaintiff about her back pain and treatment over the last year (Tr. 1023-1024). Plaintiff detailed that she is being treated by a rheumatologist (Tr. 1025). Plaintiff testified about neck pain, disk issues, and her treatment for these ailments and pain (Tr. 1028). Additionally, due to her lupus, Plaintiff testified she has been having breathing issues (Tr. 1031).

The ALJ also questioned Plaintiff about her depression, anxiety, and post-traumatic stress disorder (Tr. 1025). Plaintiff testified that her depression is worse and she gets "really down and out" (*Id.*). Additionally, her ability to focus and concentrate is "bad" (*Id.*). She is easily distracted, can't concentrate, and struggles to read, both because of her trouble focusing and because of her low comprehension level which leads to frustration (Tr. 1026). Plaintiff testified that she does not watch television and will listen to music on the radio because it is calming for her (*Id.*). She testified that she is on medications for her anxiety (*Id.*). Plaintiff described that her anxiety makes her feel "worthless" and she experiences panic attacks, which sometimes occur about once a day (Tr. 1025). Plaintiff testified that she worries about "everything," which triggers her anxiety. As for her post-traumatic stress syndrome, Plaintiff testified that she has not sought out additional treatment for this condition since the last hearing because her last

counseling location, Wellsprings, was also a Methadone clinic and she felt uncomfortable seeking treatment there (Tr. 1027). With that said, she was looking into starting counseling with a former counselor who went into private practice (Tr. 1028).

A VE also testified at the hearing. Because this was the second hearing, the ALJ began questioning the VE on the three prior jobs cited to in the previous hearing, which were injection molder (DOT 556.685-038); press operator (DOT 614.685-014); and presser (DOT 363.384-018) (Tr. 1035-1036). In formulating the hypothetical posed to the VE, the ALJ detailed the hypothetical person cannot be exposed to a concentration of pulmonary irritants, so that means they cannot work in an environment with airborne particulates (from grinding or sanding, for example) and no unventilated noxious fumes. The ALJ asked, within these parameters, if this would preclude these three aforementioned jobs, the VE answered in the affirmative for the first two, but explained that the job of a presser would be fine (Tr. 1037-038).

The ALJ then posed a second hypothetical to the VE. This time, the person was described as under the age of 50, limited to a tenth-grade education, and had the same past relevant work "that's documented." This person could carry 20 pounds occasionally and 10 pounds frequently; stand and walk a total of 6 hours in an 8-hour shift; and sit a total of 6 hours (Tr. 1038-1039). "The postural balancing, kneeling, crouching, crawling, stooping, ramps, and stairs are all occasional" (Tr. 1039). Additionally, the ALJ instructed that the hypothetical person could not be exposed to any full body vibration, but that they can reach, handle, and finger frequently. This person could not push or pull leg levers, but "foot pedals are unlimited" (*Id.*). This person must be limited to simple,

routine tasks with changes in duties being the same daily. Additionally, social interaction must be occasional and superficial (no mediation, arbitration, negotiation, confrontation of others, or supervision of others) with coworkers and supervisors. Finally, this person could not have any direct interaction with the general public (*Id.*). The VE testified that this hypothetical person could be a cafeteria attendant (DOT 311.677-010), with a light exertional level and an SVP of 2[5]. The VE explained there are 140,000 jobs nationally. The VE testified that this person could also be a mail sorter (DOT 222.687-022) with a light exertional level and an SVP of 2. Nationally, there are 48,000 mail sorter jobs. Finally, this person could be a document specialist (DOT 207.685-014) with a light exertional level and an SVP of 2. This job has 18,000 jobs in the national economy (Tr. 1040).[6]

The ALJ asked the VE about absences and how often the hypothetical worker could be off task. The VE indicated that if the employee is off task 11-15% of the time, they would not be able to keep these jobs (Tr. 1042). Additionally, most employers would only allow one absence a month. The VE testified that his testimony was consistent with the DOT and if the DOT was silent on anything, the VE testified based on his experience

---

[5] Specific vocational preparation, or "SVP", is the amount of time required for a typical claimant to: learn the techniques, acquire the information, and develop the facility needed for average performance in a job. A claimant may acquire SVP in a school, military, institutional, or vocational environment through such settings as: vocational training, apprenticeship training, in plant training, on-the-job training, and essential experience in other jobs. For example, a registered nurse has an SVP of seven, which means that a claimant can learn this job in about 2-4 years. If the job is assessed as an SVP of 1, it means that only a short duration is needed to learn the job. In this case, a 2 means that it would take up to 1 month to learn the job. *See here* DI 25001.001 Medical and Vocational Quick Reference Guide, available at https://secure.ssa.gov/poms.nsf/lnx/0425001001#a7 (last accessed March 30, 2022).

[6] The ALJ continued to modify this hypothetical to account for a hypothetical person's ability to reach, handle, and finger, which are not at issue and therefore the Court will not paraphrase those sections (Tr. 1040-1041).

and education (Tr. 1042-1043).

### 3.    Relevant Medical Records

Plaintiff submitted medical records from a variety of providers to aid the ALJ in his determination. The Court notes that Plaintiff did not cite to the medical records in her brief; therefore, the Court opts to provide a brief summary mainly directed at her mental health issues, as they are at issue in this case.

It appears that the first medical records before the Court date back to August 23, 2013 and are from SIHF Alton Health Ctr., recorded by Dr. Sunil Gangwani, MD (Tr. 375). In the first medical note, which indicates it is for a follow-up visit, Dr. Gangwani details that Plaintiff has a depressed mood, difficulty concentrating, diminished interest or pleasure, fatigue, poor judgment, and racing thoughts (*Id.*). The next note, dated April 18, 2013, Dr. Gangwani states Plaintiff saw him for a follow-up appointment and reported feeling depressed. Additionally, she told him that she was having issues at work (a deli in a grocery store) with her supervisors and coworkers (Tr. 378). At this time, she was still experiencing issues with concentrating (*Id.*). At her March 14, 2013 appointment, Plaintiff communicated that her personal life (a divorce and financial stressors) were impacting her so much that her job told her to take time off until she "get[s] her nerves straightened out" (Tr. 382).

Later on in the records, it appears Plaintiff attended counseling at a place called Centerstone (Tr. 2022-2023). In a note, dated February 28, 2017, the provider remarks that Plaintiff's file will be closed because the therapist has been unable to reach Plaintiff since August 2016 (Tr. 2027). The note indicates that Plaintiff had shown some improvement

in managing her symptoms of depression, but that there were barriers to consistent treatment (Tr. 2027-2028).

It appears Plaintiff sought treatment again on July 10, 2017 from a different provider, "The H Group" (Tr. 2030). In the intake notes, Plaintiff describes experiencing abuse both as a child and in adult relationships (Tr. 2031-2032). The intake form also notes that Plaintiff has anxiety and major depression disorder (Tr. 2033). Plaintiff described that concentration is her biggest struggle (Tr. 2034). Additionally, she has trouble focusing, makes careless mistakes, and is easily distracted (*Id.*). She experiences mood swings and irritability as well (Tr. 2034-2035). In the "MH Diagnosis Justification" section, the provider indicates that plaintiff has major depressive disorder, anxiety, and PTSD (Tr. 2038). Plaintiff describes wanting her life back, so she wants to work on managing her symptoms of depression and anxiety (*Id.*). She explains that when she worked in the past, she would start "hyper ventilating" and be sent home (*Id.*).

It also appears that around this time Plaintiff returned to Cornerstone, but ultimately her file was closed after a month or so because the agency could not get in contact with her (Tr. 2043-2047).

### 4.    State Agency Consultants' Opinions

In connection with Plaintiff's application for benefits, the ALJ also considered evidence and opinions from State Agency Consultants.

Dr. Russel Taylor, Ph.D., completed a Disability Determination Explanation on February 20, 2014 (Tr. 75-87). In this evaluation, Dr. Taylor noted that a face-to-face consultative examination was needed, as the medical records were sporadic and not

detailed (Tr. 77; 82). In the analysis section, Dr. Taylor summarized the medical records before him, including records from Dr. Gangwani, Dr. Davila, Dr. Hoelscher, and Dr. Leung (Tr. 78). The majority of these records relate to physical health issues that Plaintiff experiences; however, Dr. Taylor summarized some of Plaintiff's mental health issues as included in the medical records from Dr. Gangwani (Tr. 78). Based on the in-person meeting and the medical records, Dr. Taylor determined Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace (Tr. 79).   Specifically, Dr. Taylor determined that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and make simple work-related decisions (Tr. 83-84). Dr. Taylor determined that plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods of time; and complete a normal workday and workweek without interruptions from psychosocially based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (*Id.*).

Dr. R. Leon Jackson, Ph.D., also completed a disability determination explanation dated October 9, 2014 at the reconsideration level (Tr. 119-127). Like Dr. Taylor, Dr. Jackson also determined that a face-to-face consultative examination was necessary since the evidence before him did not include all of Plaintiff's medical records (Tr. 124). After summarizing the medical records, Dr. Jackson found that Plaintiff had moderate

difficulties in maintaining concentration, persistence, or pace (Tr. 126). Additionally, Dr. Jackson determined that Plaintiff has sustained concentration and persistence limitations (Tr. 130). Dr. Jackson found that Plaintiff was not significantly limited in the following: the ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without being distracted by them; and the ability to make simple work-related decisions (Tr. 130). With that said, Dr. Jackson found that Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods of time; and complete a normal workday and workweek without interruptions from psychosocially based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (*Id.*).

Ultimately, Dr. Jackson included the following additional explanation:

> As permitted by GMC, the clmt retains the mental capacity to understand, remember and concentrate sufficiently in order to carry out simple instructions for a normal work period. The clmt could make simple work related decisions. The clmt could interact with others sufficiently in a work setting with reduced social demands. The clmt could adapt to simple, routine changes and pressures in the work environment as permitted by GMC. These findings complete the medical portion of the disability determination.

(Tr. 131)).[7]

---

[7] There were also two state agency medical consultants who prepared reports, but those reports were focused on Plaintiff's physical limitations, which are not at issue here and the Court declines to summarize them here (Tr. 1004).

## Analysis

In this appeal, Plaintiff argues the ALJ erred by not adequately accounting for Plaintiff's moderate limitation in concentration, persistence, or pace (CPP) when determining the Plaintiff's RFC. Specifically, Plaintiff argues that the ALJ mischaracterized the opinions of two state-agency psychological experts that they found Plaintiff's moderate limitations manifested into her limited ability to understand and remember detailed instructions (and carry out those instructions) only, and did not account for Plaintiff's other moderately limited limitations in the areas of concentration, persistence, and pace (Doc. 15, p. 3; 11-15); Tr. 96-97). Plaintiff says remand is proper so that the ALJ can incorporate evidence that supports Plaintiff's moderate limitations. Additionally, Plaintiff argues that the ALJ overlooked evidence in the record that supports the "extraordinary variability in [plaintiff's] psychiatric functioning as detailed in the ALJ's decision" (Doc. 15, p. 14, citing Tr. 1001-1004). Plaintiff specifically points to portions of the record in which she appeared "disheveled," and, "distracted," but at other times appearing "directed," before returning to lacking concentration while "still in her pajamas" (Tr. 1042-1043).

Defendant argues that the RFC determination was appropriately developed because it was linked to substantial objective medical evidence; that, relatedly, the relevant medical opinions support the ALJ's RFC assessment; and that, ultimately, the ALJ properly accounted for Plaintiff's "fair" functioning in concentration, persistence, or pace (Doc. 16, p. 8). Accordingly, Defendant argues that Plaintiff's arguments fail and remand would be improper.

The RFC is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

Seventh Circuit precedent outlines how an ALJ must assess a Plaintiff's established limitations in CPP. If the ALJ finds that a plaintiff has a moderate limitation in maintaining CPP, that limitation must be accounted for in the hypothetical question posed to the VE. In most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-620 (7th Cir. 2010). In fact, the Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining CPP. For example, in *Stewart*, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009).

The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill,* 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

In *Winsted v. Berryhill*, 915 F.3d 466 (7th Cir. Feb. 8, 2019), the Court stated, "Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations. [Citations omitted.] We have also made clear that in most cases 'employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area." *Winsted*, 915 F.3d at 471.

In *Winsted*, at step three, the ALJ found that the plaintiff had moderate difficulty with social functioning and CPP. The RFC assessment limited plaintiff to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." *Winsted*, 915 F.3d at 470. The Court held that the hypothetical question based on that RFC assessment was erroneous because it "did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted*, 915 F.3d at 471 (emphasis in original).

The Seventh Circuit held similarly in *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019). At step three, the ALJ found that the plaintiff had moderate limitations in CPP. The ALJ limited the plaintiff to "unskilled work with an SVP of 2 or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task up to 10% of the workday." *DeCamp*, 2019 WL 923692, at *2-3. On appeal, the Seventh Circuit held:

> We agree that the ALJ erred by not including DeCamp's "moderate" limitations in concentration, persistence, and pace in the hypothetical question to the vocational expert. The ALJ's hypothetical to the vocational expert omitted any mention of DeCamp's moderate limitations in the four areas identified by [state agency examiner] Dr. Pape (whose opinion the ALJ cited to support her finding): maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace. The ALJ opted instead to limit DeCamp to "unskilled work" with no "fast-paced production line or tandem tasks." We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence,  and pace.

*DeCamp*, 2019 WL 923692, at *4.

Similarly, limitations to "simple tasks not as a production-rate pace" are often insufficient. While the limitation to no production requirements, such as an assembly line, does address difficulties in maintaining pace, it does not address attention and concentration. *See Martin*, 950 F.3d at 374; *Varga* 794 F.3d at 815. The Seventh Circuit reiterated this point when it stated: "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 676.

Even so, the Seventh Circuit *has affirmed* RFCs which use the exact, or similar, "simple, routine, and repetitive task" phrase when coupled with further explanation of how the plaintiff is limited. In other words, confining an individual to simple, routine tasks and limited interactions with others in an RFC is not always grounds for reversing and remanding. *Mischler v. Berryhill*, 766 Fed. App'x. 369, 376 (7th Cir. 2019). Rather, substantial evidence must support an RFC determination that a plaintiff with moderate CPP limitations can perform simple, repetitive tasks. *See Recha v. Saul*, 843 Fed. App'x 1, 4 (7th Cir. 2021) (assessing whether substantial evidence supported the RFC determination that a plaintiff with moderate CPP limitations could perform simple, routine, repetitive work).

For example, in *Pavlicek v. Saul,* 994 F.3d 777 (7th Cir. 2021), two non-examining agency consultants reviewed the plaintiff's records and determined he had moderate limitations in CPP, but could still remember basic information and simple instructions, pay attention for up to two hours at a time, and perform at a consistence pace if engaged in simple, repetitive tasks. Following a hearing, the ALJ determined the plaintiff had the RFC to perform medium work with the certain exceptions, including that he was limited to carrying out simple instructions and routine, repetitive tasks. *Id.* at 781.

On appeal, the plaintiff argued the ALJ afforded too much weight to the non-examining consultants' opinions. *Id.* at 783. The plaintiff argued the consultants' opinions were internally inconsistent because they indicated the plaintiff had moderate limitations in CPP in the checklist portion of their evaluation, which conflicted with the narrative portions of the evaluation, in which the consultants opined the plaintiff could

consistently perform simple, repetitive tasks. *Id.*

The Seventh Circuit found the ALJ reasonably relied on the consultants' opinions, citing *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015), where the Court found "an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where the narrative adequately encapsulates and translates those worksheet observations." In *Varga*, the consultant checked that the plaintiff had moderate limitations in CPP but did not provide a narrative assessment. *Id.* The Seventh Circuit found that even though an ALJ may rely on a narrative portion of an evaluation, the ALJ there erred because there was no narrative portion that explained how the moderate limitations in the plaintiff's CPP affected his ability to function. *Id.*

In *Pavlicek*, the Seventh Circuit found the narrative portion of the medical assessment was consistent with the moderate CPP checklist rating because the Regulations define "moderate" as "fair," and "a moderate limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." 994 F.3d at 783.[8]

---

[8] A note about the definitions in the Regulations. The Social Security Administration revised the Regulations in 2017 and some parties have, in the past and are continuing to, argue that these changes alter the analysis concerning a plaintiff's moderate limitations in CPP and undermine the Seventh Circuit precedent pre-dating the revisions. However, the definitions of the various limitations (*e.g.*, non, mild, moderate, marked, extreme) do not represent a departure from prior policy and are "consistent with how [] adjudicators have understood and used those words" in the past. Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01. Also, the Seventh Circuit has continued to apply the same general principles governing cases involving moderate limitations in CPP, with no indication that the revised Regulation has altered the analysis. *See, e.g., Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019) ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like "'simple, repetitive tasks'" because there is no basis to conclude that they account for problems of concentration, persistence or pace.") (citing *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015) and *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010)). *See also Dottie M.S. v. Commissioner of Social Security*, Case No. 3:19-cv-01225-GCS, 2020 WL 6134893 (S.D. Ill. Oct. 19, 2020).

The holding in *Pavlicek* merely reiterates what the Seventh Circuit has stated for years—in certain circumstances, a moderate limitation in CPP may be accommodated by limiting a plaintiff to simple, repetitive task, but there must be evidence to logically support that determination. *See Capman v. Colvin*, 617 F. App'x 575 (7th Cir. 2015) (where an ALJ permissibly relied on a consultant's opinion that the plaintiff, who was moderately limited in CPP, could perform simple, repetitive tasks); *Recha v. Saul*, 843 F. App'x 1 (7th Cir. 2021) (affirming the ALJ's decision where the ALJ relied on state agency opinions that the a plaintiff with moderate CPP limitations could maintain attention for two hours at a time and persist at simple tasks over eight- and forty- hour periods); *Lockett v. Saul*, 834 F. App'x 236 (7th Cir. 2020) (affirming an ALJ's decision where the ALJ relied on testimony from a medical expert who expressly stated the plaintiff with moderate CPP limitations could perform simple, repetitive, routine work); *see also Bruno v. Saul*, 817 F. App'x 238 (7th Cir. 2020) (affirming an ALJ's decision where the ALJ explained in detail that she limited a plaintiff with moderate CPP limitations to simple tasks based on evidence that the plaintiff's CPP struggles arose during complex undertaking, such as long tests but not during simple, repetitive tasks, such as the plaintiff's job at a bakery); *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) (affirming an ALJ's decision where the evidence showed the plaintiff's moderate CPP impairments surfaced only when he was around other people and the RFC adequately captured the context-specific limitation in CPP).

---

Here, at step three, the ALJ determined that Plaintiff was severely impaired in a variety of physical ways, in addition to her diagnoses of depression, anxiety, and PTSD (Tr. 982-983). This is the only mention of Plaintiff's mental impairments at step three, as the ALJ primarily focused on a discussion of Plaintiff's physical disabilities and ailments. At step four, consistent with the opinions of the state agency reviewers, the ALJ accepted that Plaintiff has moderate limitations in maintaining CPP, and gave the state agency consultants' reports "significant weight" (Tr. 1003). In summarizing the state agency consultants' reports relating to CPP, the ALJ concluded that Plaintiff is not significantly limited in her ability to remember and carry out simple instructions (Tr. 1004).

In crafting the hypothetical question to the VE, the ALJ focused on Plaintiff's physical impairments, detailing that this hypothetical person cannot push or pull leg levers, for example (Tr. 1039). As best as the undersigned can tell, the only mention of any mental impairments that could relate to Plaintiff's moderate limitations in CPP was when the ALJ detailed for the VE that the hypothetical person was limited to the following:

> Simple, routine tasks. Changes in duties need to be the same changes daily. Interaction, social interaction occasional and superficial with coworkers and supervisors. By superficial I mean no mediation, arbitration, negotiation, confrontation of others, or supervision of others. And no direct interaction with the general public.

(Tr. 1039).

At first blush, it appears Plaintiff is right and this is a textbook example, like *DeCamp*, of when an ALJ does not properly account for a plaintiff's moderate CPP limitations in the hypothetical posed to the VE. Closer inspection of the record, however,

shows that this type of questioning is permitted in this particular instance.

As previously noted, Drs. Taylor and Jackson determined that Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods of time; and complete a normal workday and workweek without interruptions from psychosocially-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 83-84; 130). Both Drs. Taylor and Jackson determined that Plaintiff had these limitations in the Mental Residual Functional Capacity Assessment (MRFCA) portion of the assessment.

The MRFCA contains two relevant portions, often referred to as the "checklist" portion and the "narrative" portion. *See Pavlicek*, 994 F.3d at 783. In the checklist portion, the MRFCA lists a series of questions that address the claimant's ability to perform various work activities, and the reviewing psychologist indicates whether the claimant is "not significantly limited," "moderately limited," or "markedly limited" in the functional area. SSA POMS DI 24510.063. "Not significantly limited" means "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity." *Id.* "Moderately limited" means "the individual's capacity to perform the activity is impaired." *Id.* When the activity is rated "moderately limited," the psychologist must describe the "degree and extent of the capacity or limitation" in "narrative format." *Id.*

In the narrative explanation, Dr. Taylor explained that these CPP limitations manifest in the following:

> The clmt retains the mental capacity to understand, remember, and concentrate sufficiently in order to carry out simple instructions for a normal work period. The clmt could make simple work related decisions. The clmt could interact with others sufficiently in a work setting with reduced social demands. The clmt could adapt to simple, routine changes and pressures in the work environment.

(Tr. 85)

Dr. Jackson also explained how Plaintiff's moderate limitations in the MRFCA portion manifest in the narrative section:

> As permitted by GMC, the clmt retains the mental capacity to understand, remember, and concentrate sufficiently in order to carry out simple instructions for a normal work period. The clmt could make simple work related decisions. The clmt could interact with others sufficiently in a work setting with reduced social demands. The clmt could adapt to simple, routine changes and pressures in the work environment as permitted by GMC.

(Tr. 116).

In the ALJ's questioning of the VE at the hearing, the ALJ asked (in the relevant part to CPP limitations), "This person must be limited to simple, routine tasks with changes in duties being the same daily. Social interaction must be occasional and superficial (no mediation, arbitration, negotiation, confrontation of others, or supervision of others) with coworkers and supervisors" (Tr. 1039). In the decision, the ALJ summarized the state agency psychological consultants' findings, detailing that while Drs. Jackson and Taylor determined that Plaintiff had moderate limitations in CPP, "[t]hese limitations translated into moderately limited abilities to understand and remember detailed instructions and to carry out those instructions. However, consistent with the above residual functional capacity the consultants found that the claimant was

not significantly limited in her ability to remember and carry out simple instructions"
(Tr. 1003-1004).

Seventh Circuit precedent does not require the ALJ to use specific words to express
a claimant's limitations in maintaining CPP. "We decline to provide a glossary of
adjectives for use in RFC determinations. What we do require—and our recent precedent
makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in
determining the proper RFC." *Martin*, 950 F.3d at 374. That is what the ALJ did here. An
ALJ may reasonably rely on the narrative RFC when it is consistent with the "moderate"
checklist ratings. *Pavlicek*, 994 F.3d at 783. The ALJ must consider whether the state
agency consultants' narrative RFC assessments "adequately encapsulate[d] and
translate[d]" the checklist. *Id* (citing *Varga*, 794 F.3d at 816). Furthermore, an ALJ may
reasonably rely upon the opinion of a medical expert who translates these findings into
an RFC determination. *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) (citing
*Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (citing *Meredith v. Bowen*, 833 F.2d
650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question [to the VE]
be supported by the medical evidence in the record.")).

Like in *Pavlicek,* the ALJ here determined that the medical opinion evidence
provided by Drs. Jackson and Taylor was persuasive, as it aligned with the record as a
whole, and gave a full picture of Plaintiff's mental health impairments. Specifically, the
ALJ determined that Plaintiff's mental health impairments do affect her ability to
function, but not to the extent she alleged, and thus the current RFC accounts for "short-
term memory and decreased attention and focus…by limiting her to simple routine

tasks" (Tr. 1003). Additionally, "[g]iven her reported difficulties with mood swings, irritability and problems with social interaction, the [RFC] limits her to occasional superficial interaction with co-workers and supervisors and no direct interaction with the general public (Tr. 1003. *See Pavlicek,* 994 F.3d at 783 ("a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.").[9] Plaintiff fails to point to any evidence in the record that the ALJ failed to address that supports her position. In fact, Plaintiff only points to the MRFCA checklist portions of the state agency consultants' reports (not their narrative explanations synthesizing their findings) to argue that their findings were not incorporated into the ALJ's RFC and ultimate decision (Doc. 15, p. 3, citing Tr. 96-97, 130, 1004). But this argument has no support in the Seventh Circuit precedent previously outlined. The RFC in this case includes all of the findings in both the checklist portion and the narrative portion of the state agency consultants' MRFCAs. The ALJ did not err in relying on the consultants' narrative opinions, which adequately encapsulate and translate the checklist portion of the MRFCAs. *See Pavlicek*, 994 F.3d at 783.

The ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). The ALJ did that here. Plaintiff has

---

[9] While Plaintiff argues that Drs. Jackson and Taylor never addressed their finding that Plaintiff is unable to complete a normal workday and workweek (Tr. 97, 130), the narrative portions of both of their reports do in fact address this issue.

not identified any evidence the ALJ did not properly assess; therefore, Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

The Court finds that the ALJ considered the record as a whole and properly weighed each medical opinion in accordance with the regulations. Plaintiff has cited no evidence demonstrating greater limitations are warranted than those incorporated by the ALJ in the RFC and has not identified any basis for reversal of the ALJ's decision. In sum, there is substantial evidence to support the ALJ's RFC determination.

<u>Conclusion</u>

After careful review of the record as a whole, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 31, 2022**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

Page 26 of 26